United States District Court
For the Northern District of California

1
2
3
4                          UNITED STATES DISTRICT COURT
5                         NORTHERN DISTRICT OF CALIFORNIA
6
7
8
9    PEPI SCHAFLER,
10              Plaintiff,                        No. C 14-1879 PJH
11         v.                                     **ORDER**
12   BANK OF AMERICA MERRILL LYNCH,
13              Defendant.
     _____/
14
15         Before the court is the motion of defendant Bank of America Merrill Lynch to dismiss
16   the above-entitled action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to
17   state a claim.  Having read the parties' papers and carefully considered their arguments
18   and the relevant legal authority, the court hereby GRANTS the motion.
19                                    **INTRODUCTION**
20         Plaintiff Pepi Schafler filed this action on April 23, 2014, against defendant Bank of
21   America Merrill Lynch, alleging two causes of action for breach of fiduciary duty and two
22   causes of action for negligence.
23         In the complaint, plaintiff alleges that she moved to California in 1999.  Cplt ¶ 4.  She
24   claims that her former husband fabricated a story that she had concealed assets in a
25   bankruptcy filing in Maryland, and "partnered with two San Francisco attorneys" – Dennis
26   Davis and Richard Spear – to pressure the Bankruptcy Court in the Northern District of
27   California to grant them access to her retirement funds.  See Cplt ¶¶ 6-10.  According to
28   plaintiff, the Bankruptcy Court ordered her to "surrender her retirement assets" (in the form

United States District Court

For the Northern District of California

1  of securities) to the court, and designated Mr. Spear and Mr. Davis as "bailees for this

2  property to hold it until a full proceeding will be held and decisions made."  Cplt ¶¶ 11-14.

3       Plaintiff asserts that on June 30, 2000, her attorney delivered "the demanded

4  securities" to the Bankruptcy Court, whereupon  Mr. Davis "deposited" the "securities" with

5  Merrill Lynch (which is now owned by Bank of America) in two accounts, and "ignored"

6  plaintiff's right and title to the securities.  Cplt ¶¶ 15-17.  She claims that the value of the

7  securities on that date was $429,645, and that the securities that were delivered included

8  1300 shares of Disney, 250 shares of AT&T, 600 shares of McDonald's, 400 shares of

9  Coca Cola, 100 shares of Chevron, 100 shares of Eli Lily, 2120 shares of AOL, 800 shares

10  of GE, 337 shares of Symbol Tech, 562 shares of Cardinal Health, 720 shares of Microsoft,

11  256 shares of Lucent Tech, 200 shares of Biogen, 125 shares of Dell, and 200 shares of

12  Amazon.

13       Plaintiff alleges that a hearing was scheduled for April 25, 2001 "to decide the future

14  of these securities and other somewhat bizarre issues."  Cplt ¶ 19.  She claims that she

15  later learned that Mr. Davis "came to the hearing with prepared, fabricated, orders, and the

16  court[']s signature forged."  Cplt ¶ 21.  Ten minutes after the conclusion of "the hearing,"

17  Mr. Davis allegedly "filed the forged order in the clerk[']s office" and then "presented the

18  forged order" to Bank of America Merrill Lynch, "asking them to liquidate the securities and

19  turn them into cash," which the bank did.  Cplt ¶¶ 22-23.  She claims that Mr. Davis

20  "promptly pocketed several hundred thousand dollars."  Cplt ¶ 23.

21       Plaintiff alleges that a pursuit "for these stolen and converted assets" ensued.  She

22  refers to an appeal filed with the Ninth Circuit BAP, at which she did not evidently prevail,

23  and a petition for certiorari filed with the United States Supreme Court, which was denied.

24  Cplt ¶ 25.  She asserts that "[f]inding out that it was a conspiracy and a criminal act by Mr.

25  Davis and Bank of America Merrill Lynch Inv. that deprived [p]laintiff of her funds is shocking

26  and outrageous." Cplt ¶ 25.  She claims that "[l]ong after the embezzlement and theft of her

27  securities," she was "informed by a federal district judge of this theft, fraud, forgery,

28  conversion and conspiracy by Mr. Davis."  Cplt ¶ 26.

2

1    Plaintiff alleges four causes of action.  In the first cause of action, she asserts that

2    defendant Bank of America Merrill Lynch "retitled" her property (the securities), which

3    breached the "clear obligations of a fiduciary institution to respect property ownership."  In

4    the second cause of action, she alleges that defendant "through gross unforgiveable

5    negligence" accepted an order from Mr. Davis "with a forged judicial signature" and "quickly

6    liquidated and converted [p]laintiff[']s assets."  In the third cause of action, plaintiff asserts

7    that defendant "through gross unforgiveable reckless negligence" accepted "several home

8    made, self fabricated orders" from Mr. Davis, with a "forged judicial signature," and "handed

9    over to the forger-extortionist several hundred thousand dollars of [p]laintiff[']s stolen and

10   converted funds calling them 'fees.'"  In the fourth cause of action, plaintiff alleges that

11   defendant breached its fiduciary duty by failing to "notify [p]laintiff of the fate of her

12   property."  The court interprets the first and fourth causes of action as asserting claims of

13   breach of fiduciary duty, and the second and third causes of action as asserting claims of

14   negligence.

15                        **FACTUAL AND PROCEDURAL BACKGROUND**

16   The following facts are based on court records, including clerk's dockets and orders

17   issued by the Bankruptcy Court, the U.S. District Court, the Ninth Circuit, and the United

18   States Supreme Court, in actions involving Pepi Schafler, plaintiff in the above-entitled

19   action.  The court takes judicial notice of these facts.  Fed. R. Evid. 201(b); see 21B Wright,

20   et al., Fed. Prac. & Proc. Evid. (2d ed) § 5106.4 (2014).

21   On March 6, 1996, Ms. Schafler filed a chapter 7 petition in the Bankruptcy Court for

22   the  District of Maryland.  See In re Schafler, 96-12203 (Bankr. D. Md).  She listed the

23   following assets in Schedule B - Personal Property:  "Trustee of trust, the beneficiaries of

24   whom are debtor's adult children.  Debtor interest: 1.00.  Location: In debtor possession."

25   See In re Schafler (Spear v. Schafler), 263 B.R. 296, 298 (N.D. Cal. 2001).  She also

26   attached a Statement of Financial Affairs, in which she stated that she had not transferred

27   any property "within one year immediately preceding the commencement of this case."  Id.

28   On July 9, 1996, the Bankruptcy Court entered a Discharge Order, closing the case.  Id.

**United States District Court**
For the Northern District of California

3

United States District Court

For the Northern District of California

1    Approximately two years after the case was closed, the Trustee, Scott D. Field,

2  moved to reopen the case to allow investigation and pursuit of recovery of estate assets

3  that may have been undisclosed.  The Bankruptcy Court granted the motion and the case

4  was reopened on May 7, 1998.  In early 1999, Ms. Schafler moved to California to care for

5  a terminally ill brother.  On March 12, 1999, pursuant to Ms. Schafler's request, the case

6  was transferred to the Bankruptcy Court for the Northern District of California.  In re

7  Schafler, 99-42138 (Bankr. N.D. Cal.).

8    Successor Trustee Richard Spear, who was appointed when the case was

9  transferred, sought and obtained approval to retain attorney Dennis D. Davis (and Davis'

10  law firm – Stinnett, Meyers & Davis) to represent him as needed in connection with matters

11  related to the Schafler bankruptcy.  On May 5, 1999, the Trustee, initiated an adversary

12  proceeding, seeking to recover undisclosed assets.  Spear v. Schafler, 99-4231 (Bankr.

13  N.D. Cal.).

14    On November 3, 1999, the Trustee filed an amended complaint in the adversary

15  proceeding, seeking a declaration that certain assets, namely stock certificates and bonds

16  held in trust and a condominium held by the above-referenced trust (the "Max Family

17  Trust") were property of the bankruptcy estate.  He alleged that the Max Family Trust was a

18  sham, and that Ms. Schafler had transferred her assets for no consideration into the trust

19  before filing for bankruptcy, and had thereafter used the assets of the trust as her own

20  property.  See In re Schafler, 263 B.R. at 298.

21    On November 3, 2000, Ms. Schafler filed a motion for summary judgment, arguing

22  that the Trustee's cause of a action for declaratory relief lacked merit because the

23  bankruptcy estate had irrevocably abandoned the assets to her when the bankruptcy case

24  was closed in 1996, prior to the transfer to California.  The Trustee filed a cross-motion,

25  arguing that Ms. Schafler had concealed her interest in the stock certificates and the

26  condominium, and that the assets were therefore never properly scheduled; and that under

27  those circumstances, no technical abandonment had occurred.

28    At a hearing on December 18, 2000, the Bankruptcy Court granted the Trustee's

United States District Court

For the Northern District of California

1   motion for summary judgment.  The court found that the undisputed evidence

2   demonstrated that the Max Family Trust was nothing but "a sham and a fraud on the

3   Debtor's creditors" because the assets had always been treated as Ms. Schafler's personal

4   property, and that the assets had not been technically abandoned because she had failed

5   to disclose in the schedules the true value of her interest.  Id.

6         On December 20, 2000, the Bankruptcy Court entered a judgment in favor of the

7   Trustee on the claim for declaratory relief, and declared that all stocks and bonds that had

8   been turned over to the Trustee by Ms. Schafler, and all property held by Ms. Schafler in

9   the name of the Max Family Trust as of March 26, 1996, including stocks and bonds and

10  the proceeds of such stocks and bonds, were the property of the bankruptcy estate.  Id.

11        On January 17, 2001, Ms. Schafler filed a notice of appeal from the judgment,

12  electing to proceed in the District Court.  She moved for a stay pending appeal, but the

13  court denied the motion.  On June 12, 2001, the court issued an order affirming the

14  Bankruptcy Court and dismissing the appeal.  The Ninth Circuit subsequently affirmed the

15  order of the District Court in a memorandum disposition.  See In re Schafler, 62 Fed. Appx.

16  138, 139-40, 2003 WL 1793258 (9th Cir. March 25, 2003), cert denied, Schafler v. Spear,

17  540 U.S. 1005 (2003).

18        Among other things, the Ninth Circuit held that "[a]ssets held by the Max Family

19  Living Trust as of March 26, 1996, were properly determined by the Bankruptcy Court to be

20  property of the bankruptcy estate. . . . The record indicates that [Schafler] had access to

21  both the net income and the principal of the trust, and used the assets of the trust to her

22  benefit.  Thus, the trust was not subject to exclusion from the bankruptcy estate."  Id. at

23  139.  In addition, the court found, the assets that remained in the trust at the initial closure

24  of the bankruptcy case on July 5, 1996, were not technically abandoned to Ms. Schafler,

25  because she had not properly scheduled them.  Id.

26        Meanwhile, on April 25, 2001, the Bankruptcy Court conducted a hearing, at which

27  time it heard and decided several motions.  Among other things, the court granted the

28  Trustee's motion for sale of personal property (stock certificates), notwithstanding Ms.

United States District Court

For the Northern District of California

1    Schafler's claim of exemption.  The court also granted three applications for compensation,

2    including Mr. Davis' application for $235,590.50 in fees and $22,755.69 in expenses.

3         Ms. Shafler filed a notice of appeal of those orders, electing to proceed with the

4    appeal at the District Court.  See Schafler v. Spear, C-01-1818 (N.D. Cal. 2001).  On

5    August 13, 2002, the District Court issued an order dismissing the appeal from the

6    Bankruptcy Court's order approving the trustee's sale of the stock certificates as moot,

7    because the Trustee had sold the stock certificates in accordance with the April 25, 2001

8    order, and Ms. Schafler had failed to obtain a stay from the order permitting the sale of

9    assets.  See In re Schafler, 2002 WL 1940295 at *2 (N.D. Cal. Aug. 13, 2002).  The court

10   also affirmed the Bankruptcy Court's ruling that the finding of fraudulent concealment of the

11   assets required that Ms. Schafler's claim of exemption be denied.  Id., 2002 WL 1940295 at

12   *3-4.  On March 25, 2003, the Ninth Circuit issued an order affirming the District Court.

13   See In re Schafler, 60 Fed. Appx. 696, 697, 2003 WL 1793271 (9th Cir. March 25, 2003),

14   cert. denied, Schafler v. Spear, 547 U.S. 1016 (2006).

15        Ms. Schafler subsequently filed a motion pursuant to Federal Rule of Civil Procedure

16   60(b) to vacate the decision of the District Court, which was denied on the ground that the

17   decision had been affirmed by the Ninth Circuit and the District Court no longer had

18   jurisdiction over the matter.  Schafler v. Spear, C-01-1818 (N.D. Cal. June 18, 2004).

19   Undeterred, Ms. Schafler filed a notice of appeal to the Ninth Circuit.  In addition, on

20   September 7, 2004, she filed a motion for reconsideration with the District Court, which was

21   denied on September 9, 2004.  She then filed a notice of appeal as to that order.  On June

22   22, 2005, the Ninth Circuit issued an order affirming the District Court.  See In re Schafler,

23   135 Fed. Appx. 972, 2005 WL 1475410 (9th Cir. June 22, 2005).

24        Meanwhile, on March 26, 2004, Ms. Schafler filed two lawsuits in the U.S. District

25   Court for the Eastern District of California, asserting RICO claims against Randall

26   Newsome, the judge who had presided over her bankruptcy case in the Northern District of

27   California; the bankruptcy Trustee, Richard Spear; and Mr. Spear's attorney, Dennis D.

28   Davis and his law firm.  Both cases were ordered transferred for improper venue, to this

United States District Court

For the Northern District of California

1    District, where they were related, and ultimately dismissed.

2          On October 28, 2004, the court issued an order declaring Ms. Schafler a vexatious

3    litigant.  See Schafler v. Newsome, C-04-2535 (N.D. Cal.).  The court noted that Ms.

4    Schafler had filed at least eight other actions in federal court arising out of the same

5    bankruptcy proceeding – some of which were appeals of orders of the Bankruptcy Court,

6    and some of which asserted separate "tort" claims against the same defendants – and that

7    all the cases had been resolved against her.  The court found that Ms. Schafler was

8    "unwilling to accept the outcome of her previous lawsuits and bankruptcy appeals," and that

9    she continued to file lawsuits "asserting that defendants 'stole' her assets even though the

10    Ninth Circuit concluded that the disputed assets 'were properly determined by the

11    Bankruptcy Court to be property of the bankruptcy estate.'"  Oct. 28, 2004 Order at 5

12    (quoting In re Schafler, 62 Fed. Appx. 138, 2003 WL 1793258 (9th Cir. March 25, 2003).

13          The court found that "[b]y continually repeating allegations that have already been

14    decided against her, . . . plaintiff has used the federal courts to harass the defendants."  Id.

15    In a separate order filed on the same day, the court enjoined Ms. Schafler from filing any

16    action in the United States District Court for the Northern District of California against

17    Randall Newsome; Richard J. Spear; Goldberg, Stinnett, Meyers & Davis; or "[a]ny

18    employees, agents, attorneys, affiliates, subsidiaries, parents, successors, or predecessors

19    or attorneys of the above named parties" that "arises out of or is in any way related to

20    plaintiff's bankruptcy proceedings in the United States Bankruptcy Court for the Northern

21    District of California" unless the filing of such action was first approved by the court.

22          The Bankruptcy Court issued an order approving the Trustee's final report and the

23    final fee applications, and discharging the Trustee from further administrative

24    responsibilities.  Ms. Schafler appealed, and on January 18, 2007, the Ninth Circuit BAP

25    issued an order affirming the Bankruptcy Court.  See In re Schafler, 2007 WL 7540989 (9th

26    Cir. BAP Jan. 18, 2007).  The decision of the BAP was affirmed by the Ninth Circuit on May

27    28, 2008.  Ms. Schafler's bankruptcy case was finally and fully closed by the Bankruptcy

28    Court on March 19, 2010.

United States District Court

For the Northern District of California

1      On June 16, 2010, Ms. Schafler filed a petition for writ of habeas corpus against

2 Judge Newsome, Mr. Spear, and Mr. Davis, alleging that her constitutional rights had been

3 violated by, among other things, the order of the Bankruptcy Court authorizing the sale of

4 plaintiff's securities, and the subsequent sale of those securities.  See Schafler v.

5 Newsome, C-10-80137 MISC (N.D. Cal. 2010); Schafler v. Newsome, C-11-3175 (N.D.

6 Cal. 2011).  On October 28, 2011, the case was dismissed as barred by the vexatious

7 litigant order.

8                                   **DISCUSSION**

9 A.    Legal Standard

10      A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal

11 sufficiency of the claims alleged in the complaint.  Ileto v. Glock, Inc., 349 F.3d 1191,

12 1199-1200 (9th Cir. 2003).  Review is limited to the contents of the complaint.  Allarcom

13 Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).  To survive

14 a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the

15 minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires

16 that a complaint include a "short and plain statement of the claim showing that the pleader

17 is entitled to relief." Fed. R. Civ. P. 8(a)(2).

18      Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is

19 plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim

20 has facial plausibility when the plaintiff pleads factual content that allows the court to draw

21 the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft

22 v. Iqbal, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a probability

23 requirement, but it asks for more than a sheer possibility that a defendant has acted

24 unlawfully." Id. (internal quotation marks omitted).  For purposes of ruling on a Rule

25 12(b)(6) motion, a court "accept[s] factual allegations in the complaint as true and

26 construe[s] the pleadings in the light most favorable to the nonmoving party." Manzarek v.

27 St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008).

28      Nevertheless, the court is not required to accept as true allegations contradicted by

United States District Court

For the Northern District of California

1   judicially noticeable facts.  Shwarz v. United States, 234 F.3d 428, 435 (9th Cir. 2000).  The

2   court may look beyond the complaint to matters of public record" without converting the

3   Rule 12(b)(6) motion into one for summary judgment.  Shaw v. Hahn, 56 F.3d 1128, 1129

4   n.1 (9th Cir. 1995).  Nor is the court required to "assume the truth of legal conclusions

5   merely because they are cast in the form of factual allegations."  Fayer v. Vaughn, 649

6   F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (citation and quotation omitted); see

7   also Iqbal, 556 U.S. at 678-79; In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir.

8   2008).

9       The allegations in the complaint "must be enough to raise a right to relief above the

10  speculative level."  Twombly, 550 U.S. at 555 (citations and quotations omitted).  Mere

11  "conclusory allegations of law and unwarranted inferences are insufficient to defeat a

12  motion to dismiss."  Adams v. Johnson, 355 F.3d 1179, 1183 (9th Cir. 2004); see also

13  Iqbal, 556 U.S. at 678.

14      In the event dismissal is warranted, it is generally without prejudice, unless it is clear

15  the complaint cannot be saved by any amendment.  See Sparling v. Daou, 411 F.3d 1006,

16  1013 (9th Cir. 2005).  However, "a plaintiff may plead herself out of court" if she pleads

17  facts that establish that she cannot prevail on her claims.  Weisbuch v. Cnty. of L.A., 119

18  F.3d 778, 783 n.1 (9th Cir.1997) (citation and quotations omitted).

19  B.    Defendant's Motion

20      Defendant argues that both the breach of fiduciary duty claims and the negligence

21  claims must be dismissed for failure to state a claim because plaintiff fails to plead facts

22  sufficient to support the elements of the claims, and also because the claims are time-

23  barred. The court agrees, and finds that all four causes of action must be dismissed for

24  failure to state a claim.

25      To state a claim for breach of fiduciary duty, a plaintiff must allege facts showing "the

26  existence of a fiduciary relationship, its breach, and damage proximately caused by that

27  breach." Brown v. California Pension Adm'rs & Consultants, 45 Cal. App. 4th 333, 347-48

28  (1996) (citation and quotation omitted).  The absence of any one of those elements is fatal

United States District Court

For the Northern District of California

1    to the cause of action. Id. A fiduciary relationship is one in which a party is "duty bound to

2    act with the utmost good faith for the benefit of the other party." Wolf v. Superior Court,

3    107 Cal. App. 4th 25, 29 (2003). Ordinarily, the relationship between a financial institution

4    and its depositors is not fiduciary in character. See Das v. Bank of America, 186 Cal. App.

5    4th 727, 740-41 (2010). There may be a fiduciary duty in a broker-customer relationship,

6    but the extent of the duty depends on the facts of the case. Duffy v. Cavalier, 215 Cal.

7    App. 3d 1517, 1534-35 (1989).

8         Here, plaintiff alleges no facts that, if true, would give rise to a fiduciary duty owed by

9    Bank of America Merrill Lynch to plaintiff. She asserts that after she turned over the

10   securities to the court, Mr. Davis "deposited" them with Bank of America Merrill Lynch,

11   placing them in two accounts in the name of the Trustee, Mr. Spear, and Mr. Davis. She

12   alleges that a "fiduciary institution" has a fiduciary duty to "someone whose property they

13   hold," but pleads no facts showing that Bark of America Merrill Lynch owed her a fiduciary

14   duty not to sell the securities pursuant to the order of the Bankruptcy Court.

15        In addition, she pleads no facts showing that Bank of America Merrill Lynch

16   breached any fiduciary duty. She claims that the alleged breach is that Bank of America

17   Merrill Lynch failed to "respect property ownership," but does not explain what such failure

18   entailed or how it constituted a breach of fiduciary duty.

19        To state a claim for negligence, a plaintiff must allege facts showing that the

20   defendant owed her a duty of care, that the defendant breached that duty, and that the

21   breach proximately caused the plaintiff's damages or injuries. Lueras v. BAC Home Loans

22   Servicing, LP, 221 Cal. App. 4th 49, 62 (2013). The existence of a duty of care is the

23   essential prerequisite to a negligence cause of action, and is determined as a matter of law

24   by the court. Software Design & Application, Ltd. v. Hoefer & Arnett, Inc., 49 Cal. App. 4th

25   472, 478 (1996). A bank's duty of care – to act with reasonable care in its transactions with

26   its customers – arises out of the bank's contract with those customers. Rodriguez v. Bank

27   of the West, 162 Cal. App. 4th 454, 460 (2008). Similarly, as a general rule, a broker-

28   dealer owes no duty to a noncustomer. Software Design, 49 Cal. App. 4th at 478-79.

United States District Court

For the Northern District of California

1    Here, plaintiff has not pled facts showing the existence of any duty.  She alleges only

2  that Bank of America Merrill Lynch had a "fiduciary duty" pursuant to "law and accepted

3  standards of doing business."  However, she does not allege that she herself was a

4  customer of Bank of America Merrill Lynch, or that she otherwise had any relationship with

5  it, nor does she allege any other facts supporting the contention that Bank of America

6  Merrill Lynch owed any duty to her, or that it breached any such duty.

7    Finally, the court finds that both the breach of fiduciary claims and the negligence

8  claims are time-barred.  In California, breach of fiduciary claims are subject to a four-year

9  statute of limitations.  See Cal. Civ. P. Code § 343.  Negligence claims are subject to a two-

10  year statute of limitations.  See Cal. Civ. P. Code § 335.1.  Here, plaintiff alleges that the

11  purported wrongdoing occurred on April 25, 2001, but she did not file the complaint in the

12  present action until April 23, 2014 – well beyond the running of the limitation period.

13    Plaintiff alleges that she "learn[ed] much later" that Mr. Davis had come to the April

14  25, 2001 hearing with "prepared, fabricated, orders, and the court's signature forged, and

15  the ten day appellate period crossed out."  Cplt ¶ 21.  She claims that it was these

16  "fabricated orders" that allowed Bank of America Merrill Lynch to "liquidate the securities

17  and turn them into cash."  To the extent that plaintiff is attempting to argue that the

18  limitation period should be tolled by operation of the discovery rule, see Parrish v. National

19  Football Leave Players Ass'n, 534 F.Supp. 2d 1081, 1089 (N.D. Cal. 2007) (discussing

20  operation of discovery rule), such a claim is without merit.

21    First, plaintiff's claim in this case is that Bank of America Merrill Lynch committed

22  some wrongdoing by placing the securities in accounts in the names of Mr. Spear and Mr.

23  Davis, and then selling them when presented with an order from the Bankruptcy Court

24  authorizing the sale.[1]  She contends that the order was "forged" by Mr. Davis, but not that

25  Bank of America Merrill Lynch had anything to do with the purported forging of such order.

26  _____

27    [1] It appears that in filing the present action against Bank of America Merrill Lynch,
plaintiff has attempted to plead around the October 28, 2004 vexatious litigant order, which

28  enjoined her from filing suit against Judge Newsome, Mr. Spear, and/or Mr. Davis in
connection with her bankruptcy proceeding.

United States District Court
For the Northern District of California

1    Now, in her opposition to the present motion, she argues that until recently, "no one really

2    knew . . . what became of her securities" except for Bank of America Merrill Lynch – an

3    assertion that is plainly contradicted by the full record of plaintiff's bankruptcy and all the

4    associated appeals.  While she has not previously asserted any claims against Bank of

5    America Merrill Lynch, she has repeatedly argued that the sale of the securities was

6    unlawful, and, indeed, raised the same argument regarding the "forged" order in prior

7    actions.

8    C.    Subject Matter Jurisdiction

9        Finally, as a further basis for dismissing this case, the court finds that it lacks subject

10   matter jurisdiction over this claim regarding the sale of securities that were part of plaintiff's

11   bankruptcy estate.  The court may raise the issue of subject matter jurisdiction sua sponte.

12   See Moore v. Maricopa County Sheriff's Office, 657 F.3d 890, 894 (9th Cir. 2011).

13       As detailed above in what is a greatly abbreviated summary of the procedural events

14   in plaintiff's bankruptcy case, all claims relating to the bankruptcy have been thoroughly

15   adjudicated, and the bankruptcy case is closed.  In the prayer for relief in the complaint in

16   the present action, plaintiff seeks a "[r]estitution judgment in the amount of $429,674" –

17   which is the amount at which she claims the securities were valued when she delivered

18   them to the Bankruptcy Court in June 2000 – plus "[a] further judgment for all the dividends

19   and stock splits missed."  That is nothing more than a request that the order of the

20   Bankruptcy Court directing the sale of the securities be vacated.

21       Plaintiff attempted numerous times during the bankruptcy proceeding to challenge

22   that order, to no avail.  This court has no jurisdiction to vacate the order or to reopen

23   plaintiff's bankruptcy case in light of the rulings by the Ninth Circuit.  Plaintiff's allegation

24   that Bank of America Merrill Lynch unlawfully changed the "title" on the securities and

25   "embezzled" them does not change the fact that the action plaintiff is challenging is the sale

26   of the securities pursuant to the order of the Bankruptcy Court, which ruled that the assets

27   held by the Max Family Trust, including the securities, were the property of the bankruptcy

28   estate.  Plaintiff previously appealed that order, and the appeal was dismissed.

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

In accordance with the foregoing, defendant's motion to dismiss the complaint for failure to state a claim is GRANTED.  The dismissal is WITH PREJUDICE, because the factual and legal issues relating to the disposition of plaintiff's securities were adjudicated in plaintiff's bankruptcy proceeding, In re Pepi Schafler, 99-42138 (Bankr., N.D. Cal.); 06-1051 (B.A.P. 9th Cir.), and leave to amend would therefore be futile.

Because the court finds that the action must be dismissed with prejudice, the motion for change of venue is DENIED as moot.  The August 13, 2014 date previously set for the hearing these motions is VACATED.

**IT IS SO ORDERED.**

Dated:  August 8, 2014

_____
PHYLLIS J. HAMILTON
United States District Judge